Brockenbrough, J.
In the case of Simon v. Motivos, it is said by Burrow, that the judges of the court of king’s bench were inclined to think, “ that buying and selling at auctions was not within the statute of fraudsand in the report of the same case by judge Blackstone, it appears that three of the judges, lord Mansfield, Wilmot and Yates, expressed opinions to that effect. That, however, was not the decision; and, with great deference to the wisdom which then presided in that court, it would have been strange if it had been. The statute expressly declared, that no contract for the sale of goods for ten pounds sterling or upwards shall be allowed to be good, unless the buyer either accept part of the goods sold, or pay earnest money, or unless some note or memorandum in writing of the bargain be made, and signed by the parties to be charged, or their agents thereunto lawfully authorized; and a similar provision, as to the note or memorandum in writing, had been made as to contracts or sales of lands, or any interest in or concerning them. A decision according to the reported inclination of the minds of the judges, would have been equivalent to saying, that a- buying or selling at auctions was not, in the one case, a contract for the sale of goods, and, in the other, a contract or sale of lands. The master of’the rolls, sir W. Grant, in Bragden v. Bradbear, makes the following judicious observations on that subject: “ As to the doctrine, that the statute of frauds does not apply to sales by auction, there is no decision; for *24 though in Simon v. Motivos, the judges did express their opinion, the ground bf their decision was that the-memorandum- of the auctioneer answered the requisitions of the statute. Those words are large enough to comprehend every,contract by whatsoever preliminary means, whether verbal communications bidding at an auction, it may have been brought about, and it is not clear to me, that sales by auction are out of the mischief against which the statute meant to guard. From the public nature of a sale by auction, it does not follow that what passes there must be matter of certainty: so far from it, that I never saw more contradictory swearing than in those cases, where attempts were made -to introduce evidence of what was, said or done during the course of the sale. Though, ordinarily, the terms and conditions are reduced to. certainty by -a written or printed particular, yet if it is true that the statute does not affect any, sales by auction, .the whole of the terms might be left to parol evidence, at the. hazard of all the uncertainty of perjury, which the statute intended to exclude. I should therefore hesitate to say, the policy of the law does not extend to such sales. Still more should I hesitate to say, the words of the statute, according to the true construction, do not include sales by auction.” A similar opinion is expressed by the same judge, in Higginson v. Clowes, 15 Ves. 515. The decision in Simon v. Motivos, was that the auctioneer must be considered as agent for the buyer, after knocking down the hammer, as well as for the seller, and that his setting down in writing, the name of the buyer, the price &c. was a compliance with the terms of the statute, it being a memorandum in writing, signed by-the party, or by some person by him lawfully authorized.
' The counsel for the appellant spoke of judicic£'lsales as being out of the statute. These are sales before a master in chancery, under 'decrees of that court, and are governed by the rules prescribed by the court. It *25 is said that the judgment of the court takes them out J ° of the statute. Sugd. Law Vend. p. 78. Attorney General v. Day, 1 Ves. sen. 218. If it be true that these sales are properly exempted from the restrictions of the statute, it is surely proper, that that exemption should be narrowed as much as possible, and that it should be confined to such as are technically judicial sales. But it cannot be pretended, that a sale by a sheriff of an insolvent’s estate is a judicial sale. The sheriff is bound by the law to sell and convey, and he performs these acts without invoking to his aid the judgment of any court whether of law or equity.
The real decision in Simon v. Motivos has been followed by the courts of England to this day. It is true, that in Stansfield v. Johnson, 1 Esp. N. P. Rep. 101. chief justice Eyre expressed his opinion, that it applied to sales of goods only, and he ruled that in a sale of lands the auctioneer was not to be.taken as an agent for the purchaser. This distinction was repudiated by lord Eldon, in Coles v. Trecothick, 9 Ves. 249. and in Kemeys v. Proctor, 1 Jac. & Walk. 351. and expressly overruled by the court of common pleas in Emmerson v. Heelis, 2 Taunt. 38. and White v. Proctor, 4 Id. 209. In each of the two last cases, the auctioneer set down the name of the highest bidder in a bill or particular of sale, and the court decided, that this was a memorandum in writing signed by an agent of the purchaser against whom the action was brought. In Emmerson v. Heelis, the chief justice assigns his reasons for saying, that the auctioneer is the agent for the purchaser, in putting his name to the memorandum of the sale. I do not think they are very satisfactory. If it were a new question, I should say, that the auctioneer is the agent employed by the vendor to make the sale, and by the purchaser for crying or proclaiming the last bid, and thereby of declaring him to be the purchaser; and that there his agency ceases, unless the purchaser directs him to sign *26 his name to the memorandum, or assents expressly to his doing so; for the parol bargain, and the written confirmation, are separate and distinct acts. But although such is my opinion, yet I consider it as settled law, which ought not now to be disturbed, that the auctioneer is the agent to sign the name of the purchaser, and that he is bound by it. In Kemeys v. Proctor, 3 Ves. & Beam. 57. sir W. Grant remarked, that if the question were open, he should be disposed to say, that the auctioneer is not the agent of the purchaser, but after two consecutive judgments of a court of law (meaning those in Taunton) he should not give a different judgment from theirs, whatever might be his private opinion. And in the same case, Jac. & Walk. 351. lord Eldon said, he could never understand how it was possible to distinguish between an auctioneer being an agent for a buyer of goods under the 17th section, and being an agent for the purchaser of lands under the 4th section, of the statute of frauds, the language of each section as. to this matter being the same; but he doubted whether if he had had to decide the question originally, he should have held the auctioneer to be such an agent in either case. In rendering the final decree, he acquiesced in the decisions of the courts of common law.
The counsel for the appellee admits, that the law is as here stated, but he argues that the memorandum in writing cannot properly be signed by one of the contracting parties as the authorized, agent of the other; that the agent must be a third person. For this position he refers to the cases of Wright v. Dannah, and Farebrother v. Simmons. The first was not a sale at auction: it was a sale of clover seed at the corn exchange in London; the plaintiff was the owner and vendor ; he wrote down the name of the purchaser, with the price of each sack of clover seed, and in writing down the price, he made a mistake in the figures; the defendant, the purchaser, overlooked him whilst he *27 wrote, and desired Mm to correct the mistake, which he did, and the memorandum was left with the defendant: lord E'llenborough sustained the defence, and remarked, that “ the agent must be some third person, and could not be the other contracting party.” The other case was assumpsit by an auctioneer against the purchaser of a lot of turnips ; the plaintiff had himself written down the different biddings. Abbott, C. J. said, “ the question is, whether the writing down the defendant’s name by the plaintiff, with the authority of the defendant, be in la.w a signing by the defendant’s agent. In general, an auctioneer may be considered as the agent and witness of both parties. But the difficulty arises in the case from the auctioneer suing as one of the contracting parties. The case of Wright v. Dannah seems to me to be in point, and fortifies the conclusion at which I have arrived, viz. that the agent contemplated by the legislature, who is to bind a defendant by his signature, must be some third person, and not the contracting party on the record.’’'’ The influence of this case on the one before us, I shall presently consider.
Having ascertained, that in ordinary auction sales, whether of goods or of lands, the auctioneer may be the agent of the purchaser to sign his name to a note or memorandum of the sale, I will now inquire, whether in public auction sales, conducted by the officer of the law, such officer may be considered as the authorized agent of the purchaser for a similar purpose. In favour of such agency, it may be remarked, that the officer is entrusted by the law with the power to conduct such sales. The seizure and sale of goods, and sometimes of lands and interests therein, is a duty imposed on him which he cannot decline: it is not only a compulsory, but often a burthensome and painful duty, for which the compensation received is sometimes a poor equivalent. If an ordinary auctioneer, who discharges his functions by the authority of the owner of the property, *28 be a disinterested person, fit to be considered as the agent of the purchaser, much more may the sheriff be So considered. In a sale under a fieri facias, the possession of the goods is vested in the sheriff, for the special purpose of levying the debt by the sale thereof; and the tie which binds him to the creditor is no stronger than that which binds the auctioneer to his employer. Nor is there any difference, in this respect, between the duty and responsibility of a sheriff who sells under a fi. fa. and of him who sells the lands and estates of an insolvent debtor. It is true, that the statute vests all the estate contained in the schedule, and any other estate which may be discovered to belong to the insolvent, in the sheriff of the county wherein the lands, tenements, goods and chattels, shall lie or be found. But for what purpose are they vested ? The same statute answers, that he shall sell them for the best price that can be got for the same, an'd the proceeds of the sale shall be by him paid over to the creditor of the insolvent. Although the legal title is vested in him, yet it is for the benefit of others. The sheriff himself, then, if he were to conduct the sale, could not be said to be a contracting party, any more than the auctioneer who is vested with the temporary possession of the properly sold by him, and might with propriety be considered as the agent of the purchaser. If, however, the purchaser refuses to carry the contract into effect, and the sheriff brings the suit to recover the purchase money, the case of Fare-brother v. Simmons applies to exclude the sheriff from being a witness, and probably to exclude the memorandum of the sale made by him, because he is a party on the record. But the same objection does not lie to the evidence of the deputy sheriff, nor to the memorandum made by him, although in fact he may have sold the land, and is liable to the same extent with his principal,' to the creditor for the proceeds, and to the insolvent for the surplus. He may be such witness, and the memo *29 randum made by him may be given in evidence, be-J ° cause he is not a party on the record.
It has been urged, that the case of Carrington v. Anderson is a decisive authority for the exclusion of the evidence of the deputy sheriff in this case. That was an action brought in the name of the sheriff on an indemnifying bond taken under the statute, at the relation and for the benefit of a claimant of property taken and sold by the deputy sheriff, under an execution against the goods of a debtor. At the trial, the deputy sheriff was introduced as a witrtess to prove, that the goods were really the property of the debtor, a.nd not of the claimant. The relator of the plaintiff moved to exclude him, and the court of appeals in its second resolution, sustained the objection. The court gave no reason for its decision, and it is difficult to understand why the deputy was ruled to be an incompetent witness. The sheriff was merely a nominal plaintiff': he was not even liable for costs : and in the case of Stone v. Pointer, in which judge Roane, speaking for the court, gave a brief but lucid opinion, it was decided, that under the statute, the sheriff was sheltered from any action by the party claiming the property, unless the obligors in the bond should prove insolvent; and that the sheriff gave no implied warranty of the title, so that the purchaser, if evicted, could not recover from him. So that the sheriff was neither liable for costs, nor liable to the claimant of the property except on a contingency, nor fiable to the purchaser in any way. The deputy of the sheriff, therefore, could, not be interested in the event of the suit, and was clearly competent. It seems to me that the case of Carrington v. Anderson on this point, is not law, and, of course, would not justify the exclusion of the deputy sheriff from testi fying in the case now before the court.
I am of opinion, that the judgment should be reversed, and the cause remanded for a new trial, on which the deputy sheriff is to be admitted as a witness, if offered.
*30 Carr, J.
This case has been well argued. A pre- ° r . tit limmary question was made by the counsel for the appellee, but not much pressed,—Whether, a sheriff in making sale of an insolvent debtor’s effects, can act by deputy? I think, clearly that he may. He is directed to sell the estate to the best bidder at public sale: but the statute does not oblige him to act in his own person as cryer. He may surely employ either his deputy, or any other person, as auctioneer.
If the point whether sales at auction are within the statute of frauds, was an open question, I should be inclined to think with lord Mansfield and the other judges in Simon v. Motivos, that they are not. They seem to be without the policy of that statute, which meant to provide against private and clandestine sales. But the later cases do not leave the question open; many having decided that these sales are within the statute. But granting that sales at auction, in general, are within the statute, it was said, that a sale like this, conducted by the sheriff, who by the law is directed to sell and convey, is an exception; that it stands on the footing of judicial sales, which are clearly without the operation of the statute. I feel much doubt as to the position that this can be taken as a judicial sale. Lord Hardwicke says, “ the case of purchasers before the master, is certainly out of the statute; nor should I doubt the carrying into execution against the representative, a purchase by a bidder before the master, without subscribing, after confirmation of the master’s report that he was the best purchaser; the judgment of the court taking it out of the statute.” It would seem from this, that it is not what passes before the master, nor his report, but the judgment of the court confirming it, which takes the case out of the statute: and we know, that there is no judgment of any court passing upon the sale made by the sheriff under the insolvent law. Again, in New York, lands are subjected to execution and sale under *31 a fi. fa. and the courts of that state have decided, that these sales are within the statute of frauds. Passing this then as a doubtful point, let us look further into the • case.
Admitting the sale to be within the statute, two other questions remain: ought not the evidence of the deputy sheriff to have been admitted? and if so, does it not shew a compliance with the requisitions of the statute ? It is contended, with great ingenuity, that the deputy in conducting the sale, acted as sheriff; that he could only have so acted upon the ground, that in law the sheriff and his deputy are as one person; that, in this view, the deputy was not an agent, but a principal contracting party, and cannot act as the agent of the vendee in making the memorandum, and writing his name; nor can he, the sheriff being the plaintiff upon the record, give evidence in the cause: and authority was cited to shew, that the agent for the contracting parties must be a third person between them. The first case relied on, was Wright v. Dannah. That was no sale at auction, but a private contract, by which Wright, the owner of some clover seed, sold them to Dannah. The seller made a memorandum of the sale; and while he was writing the buyer looked over him, and suggested an alteration, which was made. Suit was brought; and it was objected, that this memorandum was not sufficient to take the case out of the statute, not being signed by the party or his authorized agent. It was insisted on the other side, that the defendant, by overlooking and approving what the plaintiff had written, made him his agent for the purpose of signing the memorandum; but lord El~ lenborough decided, “ that the agent must be some third person, and could not be the other contracting party.” The case of Farebrother v. Simmons was that of an auctioneer selling his own goods, making a memorandum, and suing on it: Abbott, C. J. said,—“In general an *32 auctioneer may be considered as the agent and witness of both parties. But the difficulty arises in this case, fr0m the auctioneer suing as one of the contracting parties.” He then cited Wright v. Dannah, as being in point; and said, “ it fortified the conclusion he had arrived at, that the agent contemplated by the legislature, who is to bind a defendant by his signature, must be some third person, and not the other contracting party upon the record.” Now, this seems to me perfectly sound law; its application to this case however, is by no means so clear. That rests upon the hypothesis that the sheriff and his deputy must be taken as one, and so, that the deputy is the plaintiff upon the record, and a principal contracting party. Is it so ? Certainly not, in point of fact; for the suit is in the name of Brent, the sheriff, not of Hill, the deputy. The law vests the title of the insolvent’s estate, in the sheriff of the county where the lands &c. lie, that is, in the high sheriff, and directs him to sell at auction, on ten days notice. How is this sale to be conducted ? May not the sheriff employ any person he chooses, as his cryer or auctioneer ? and what so natural as that he should employ one of his deputies, every day in the habit of selling property under execution ? The sale is advertised ; that informs the public, that the interest of the insolvent in the property contained in his schedule, is the subject of sale. The legal title to this, the law tells them, is in the high sheriff. The bidders attend: they see the deputy, not the high sheriff, conducting the sale: he holds the schedule in his hand, makes known its contents, and calls on the bystanders to say what they will bid. A. B. and C. bid as they please; and each lower bid is cried till a higher is made; and so on till it is knocked off to the highest bidder; and immediately the cryer sets down upon the schedule, the name of this bidder, with the price he has given, and *33 declares him the purchaser. Is not all this perfectly plain and fair ? Do not the bidders lmow, that they are dealing, not with the legal owner, but with his agent, the mere cryer ? And do they not by bidding make him their agent for the purpose of setting down their several bids ? The language of sir James Man field on this point, in Emmerson v. Heelis, is particularly clear and strong: he says,—“By what authority does he (the auctioneer) write down the purchaser’s name ? By the authority of the purchaser. These persons bid, and announce their biddings, loudly and particularly enough to be heard by the auctioneer. For what purpose do they do this ? That he may write down their names opposite the lots. Therefore, he writes the name by the authority of the purchaser, and he is an agent for the purchaser: and it does seem, therefore, that this is a contract signed by an agent for the purchaser, and consequently binding.” If the sale in question here, had been conducted by any body but the deputy sheriff, there could have been no question. I have shewn, I think, that the deputy was nothing but a mere auctioneer. How could he feel that sort of interest in the event of this suit, which should render him incompetent ? Every auctioneer feels as much; and yet wc know, it is a general rule that auctioneers are agents and witnesses for both parties. I think, then, that the circuit court was wrong in rejecting Hill’s evidence. He was not one of the contracting parties; was no party upon the record; and had no such interest as rendered him incompetent. The facts which he would have proved, satisfy fully the requisitions of the statute, and support the sale as a good one.
I think, therefore, that the judgment must be reversed, and the cause sent back for a new trial, with instructions to admit the deputy, if offered, as a witness.
Cabell, J, concurred in the judgment.
*34 Brooke, J.
The exceptions taken to the opinions of ... . the circuit court, present two questions—Whether a public sale by a sheriff of the land of an insolvent debtor, according to the provisions of the statute for relief of insolvents, is within the statute of frauds ? and Whether the deputy sheriff who made the sale, is a competent witness for the plaintiff, in an action brought by the high sheriff against the purchaser at such sale, to recover the purchase money ? It was much doubted in England, for some time, whether sales at auction, in general, were within the statute of frauds. The first case I have seen is Simon v. Motivos; where the court was strongly inclined to the opinion, that sales at auction were not within the statute, though that was not the point decided. The decision was, that, in sales at auction, the auctioneer must be considered as the agent for the buyer (after knocking down the hammer) as well as the seller; and that his setting down in writing the name of the buyer, the price &c. was sufficient to take it out of the statute; that .is, was a sufficient compliance with its requisitions. And the law has been so settled by several subsequent adjudications. The facts stated in the case before us, are entirely equivalent with those of Simon v. Motivos. The land was sold at public auction ; the deputy sheriff conducted the sale, and was the auctioneer; the land was struck off to the purchaser ; and the deputy, acting as auctioneer, immediately after, wrote down the purchaser’s name and the price, on the schedule, in which it was mentioned and described, and which he all the time held in his hand. Upon the authority of the decision in Simon v. Motivos, and the other cases following that, which have been cited at the bar, I think the requisitions of the statute of frauds were, complied with in this case. But I am strongly inclined to think, further, that a sale by a sworn public officer, made in pursuance of the provisions of the law, is not within the statute; that none of the mis *35 chiefs intended to be prevented by the statute, are to be apprehended in such a case, though the officer should omit to write down the name of the buyer and the price, or to comply with any other requisites of the statute. To me it seems, that the officer is not to be held the agent of the seller and the buyer, but, more properly, the agent or instrument of the law. Judicial sales, under a decree in chancery, are not considered as within the statute, though they be not conducted as ordinary sales at auction must be, to take them out of the statute. This inclination of my judgment has prevented me from taking a more elaborate view of the cases cited at the bar. On the second point, I am equally clear. The deputy sheriff stood perfectly indifferent between the purchaser and the plaintiff, or the creditor of the insolvent, for whose benefit the land was sold, and the suit was brought: and I concur with the other judges, that his testimony ought to have been admitted.
Judgment reversed, and the cause remanded for a new trial, with directions to admit the evidence of the deputy sheriff, if offered.